UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOEY T. STAKEY,<br><br>                Plaintiff,<br><br>    v.<br><br>KLINT H. STANDER; DR. HADLOCK; HOWARD WILLIS; TIM McHUGH; DEITCHLER LANE; ROBERT BALFOUR; ANDY MACHIN; TOM MANWARING; LARRY HYNES; COLLEEN SMITH; JAN EPP; APRIL DAWSON; CORRECTIONAL MEDICAL SERVICES, INC.; RANDY BLADES; JOHN HARDISON; and JOHANNA SMITH;<br><br>                Defendants. | Case No. 1:09-CV-00094-BLW<br><br>**ORDER** |

      Pending before the Court are several motions filed by Plaintiff that are ripe for adjudication. Having reviewed the arguments of the parties and having considered the record in this matter, the Court enters the following Order.

## BACKGROUND

      Plaintiff, an inmate in custody of the Idaho Department of Correction (IDOC) alleges that Correctional Medical Services (CMS) Defendants were deliberately

**ORDER - 1**

indifferent by improper treatment of his right shoulder injuries and improper provision of pain medication between 2007 and 2009, violating the Eighth Amendment of the United States Constitution. Plaintiff further alleges that the individual CMS Defendants were medically negligent under state law, a supplemental jurisdiction claim. Defendants have filed a motion for summary judgment on all of Plaintiff's claims. (Dkt. 70.)

**PLAINTIFF'S MOTION FOR RECONSIDERATION
OF APPOINTMENT OF COUNSEL AND
REQUEST FOR EXTENSION OF TIME TO FIND COUNSEL
AND AN EXPERT WITNESS AFTER RELEASE ON PAROLE**

Plaintiff seeks reconsideration of the Court's Order (Dkt. 8); he again asks for appointment of counsel. (Dkt. 59.) He is proceeding in forma pauperis status. (Dkt. 39.) Plaintiff is now at the prison work center, earning an income (that cannot be accessed to pay an attorney), and preparing for release on parole.

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330-31 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Plaintiff's Motion for Reconsideration of Request for Appointment of Counsel is extremely well-drafted and well-argued, cutting against his assertion that he is unable to adequately protect his interests in this lawsuit if he proceeds pro se. The Court finds that

none of the factual information contained in his new Motion shows that the earlier decision denying appointment of counsel should be disturbed.

There is no doubt that it is difficult to litigate from a prison cell and that pro se individuals do not have the legal training or resources to do what they could if they were lawyers or had lawyers. However, prisoner status and lack of legal expertise are not enough to warrant appointment of counsel.

In *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." In *Lewis v. Casey*, 518 U.S. 343 (1996), the Court explained the limitations of the *Bounds* holding. There, the Court emphasized that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." 518 U.S. at 351. A careful review of the *Casey* decision demonstrates that the Supreme Court has limited the application of *Bounds* to *initial filings* of prisoner cases involving their convictions or conditions of confinement. Particularly, the Court stated:

> It must be acknowledged that several statements in *Bounds* went beyond the right of access recognized in the earlier cases on which it relied, which was a *right to bring* to court a grievance that the inmate wishes to present. These statements appear to suggest that the State must enable the prisoner to discover grievances, and *to litigate effectively once in court*. These elaborations upon the right of access to the court have no antecedent in our pre-*Bounds* cases, and *we now disclaim them*."

518 U.S. at 354 (emphasis added).

Here, Plaintiff's inability to more fully litigate his claims are "incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Plaintiff has shown that his litigation skills exceed that of most prisoners, despite the medical and personal difficulties he cites in his Motion and Affidavit. Accordingly, his Motion for Appointment of Counsel will be denied.

Plaintiff also moves the Court to permit an extension of time until his tentative parole release date of March 3, 2011, to allow Plaintiff sufficient time to hire an attorney and an expert witness in this case. (Dkt. 62.) Good cause appearing, the Court will permit Plaintiff to have several months to find counsel and an expert and file a supplement to his response to Defendant's pending motion for summary judgment. No supplement shall be permitted if Plaintiff elects not to retain counsel and/or an expert.

## PLAINTIFF'S MOTION FOR APPOINTMENT OF COURT EXPERT

Plaintiff seeks appointment of an independent court expert with a medical orthopaedic speciality, and asks for each set of Defendants to bear fifty percent (50%) of the costs of such expert. (Dkt. 66.)

In general, an expert witness may testify to help the trier of fact determine the evidence or a fact at issue. Fed. R. Evid. 702. Federal courts have discretion to appoint expert witnesses, and parties may provide names of which witnesses to appoint. Fed. R. Evid. 706(a)&(d); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). Although there is no definite rule to guide discretion, a court may appoint an independent expert witness when "scientific, technical, or other

specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702.

Complex scientific issues for which an expert would be helpful include determining what the concentration levels of environmental tobacco smoke (ETS) are in a prison and determining the health effects of ETS on nonsmoking prisoners, *McKinney v. Anderson*, 924 F.2d 1500 (9th Cir. 1991), *vacated on other grounds by sub. nom.*, *Heiling v. McKinney*, 502 U.S. 903 (1991), or "evaluating contradictory evidence about an elusive disease of unknown cause," such as fibromyalgia. *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999).

Federal district courts have recognized that, "[r]easonably construed, Rule 706 does not contemplate the appointment of, and compensation for, an expert to aid one of the parties." *See, e.g., Gamez v. Gonzalez*, 2010 WL 2228427, *1 (E.D.Cal. June 3, 2010) (internal quotations, punctuation and citations omitted). The principal purpose of a court-appointed expert is to assist the trier of fact from a position of neutrality, not to serve as an advocate.[1]

---

[1] The *in forma pauperis* statute, 28 U.S.C. § 1915, does not authorize federal courts to appoint or authorize payment for expert witnesses for prisoners or other indigent litigants. Ordinarily, the plaintiff must bear the costs of his litigation, including expert expenses, even in *pro se* cases. *See Pedraza v. Jones*, 71 F.3d 194, 196 (5th Cir. 1995); *Malik v. Lavalley*, 994 F.2d 90 (2d Cir. 1993); *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) (inmate's dilemma in being unable to proceed with suit because of inability to pay for expert witness was no different than that of non-prisoner claimants who face similar problems; to authorize government funding for such fees would, in effect, be granting inmates better treatment than fellow citizens who are not incarcerated). Seeking appointment of an independent expert is not a means of side-stepping this rule.

If the federal court appoints an expert witness under Federal Rule of Evidence 706(a), with the expert's fees to be allocated among the parties "in such proportion and at such time as the court directs." Fed. R. Evid. 706(b).

Whether an expert is needed is a decision to be made in the context of the standard of law governing the claims and defenses at issue. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). The deliberate indifference to a substantial risk of serious harm standard is met if a medical provider acts "recklessly disregarding that risk." *Id*. at 836. Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).[2]

The standard of law of deliberate indifference is extremely high and requires the jury to find a subjective component to the defendants' behavior. *See Ledford v. Sullivan*,

---

[2] Here, Plaintiff has also brought medical negligence claims, but because the Constitution is not concerned with medical negligence, the Court declines to consider Plaintiff's medical negligence claims as a basis for appointing an expert witness that Plaintiff asks to be funded solely by Defendants.

**ORDER - 6**

105 F.3d 354, 359 (7th Cir. 1997). In that case, the Court reasoned:

> Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward Ledford's serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.

105 F.3d at 359.

While expert witnesses can help determine underlying scientific or complex medical issues when needed, they cannot help in the area of deliberate indifference, a required element of an Eighth Amendment claim. In deliberate indifferent cases, medical experts cannot testify that a defendant was deliberately indifferent, which is an "attempt[] to tell the jury what result to reach and which runs the risk of interfering with a district court's [jury] instructions." *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994).[3]

Because deliberate indifference is an inquiry that focuses on the actual state of

---

[3] In *Berry*, the Court opined:

> Although an expert's opinion may "embrace[ ] an ultimate issue to be decided by the trier of fact[,]" Fed. R. Evid. 704(a), the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens.

25 F.3d at 1353.

ORDER - 7

mind of the individual defendant, mere differences in judgment between medical professionals regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

In *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004), where summary judgment was granted for Dr. Chung, the prison medical doctor who had treated an inmate who died of a drug overdose, the Court rejected expert witness opinions that the prison doctor did not act in a medically reasonable manner:

> *It does not matter whether Dr. Chung's assumptions and conclusions were reasonable*. Rather, *so long as she was not subjectively aware of the risk* that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Id*. at 1060 (emphasis added).

In further explanation of this principle as it relates to the expert witness issue, the Ninth Circuit Court expounded:

> Although Dr. Tackett opined that Dr. Chung "disregarded [the] serious and known risks" of combining the three drugs, his conclusion was merely speculative, because he lacked any insight into Dr. Chung's subjective knowledge. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere ... speculation [does] not create a factual dispute for purposes of summary judgment.") (citation omitted). Dr. Tackett's opinion was predicated upon his position that Dr. Chung administered the medications without assessing Keane's actual medical condition and without regard to possible withdrawal systems. This accusation is one of negligence as opposed to deliberate indifference. As we recognized in *Lolli* [*v. County of Orange*, 351 F.3d 410 (9th Cir. 2003)], there must be a conscious disregard of a serious risk of harm for deliberate indifference to exist. *See Lolli*, 351 F.3d at 421. If Dr. Chung had assessed

mind of the individual defendant, mere differences in judgment between medical professionals regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

In *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004), where summary judgment was granted for Dr. Chung, the prison medical doctor who had treated an inmate who died of a drug overdose, the Court rejected expert witness opinions that the prison doctor did not act in a medically reasonable manner:

> *It does not matter whether Dr. Chung's assumptions and conclusions were reasonable*. Rather, *so long as she was not subjectively aware of the risk* that Keane could be suffering from a drug overdose, and disregarded that risk, she was not deliberately indifferent. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Id*. at 1060 (emphasis added).

In further explanation of this principle as it relates to the expert witness issue, the Ninth Circuit Court expounded:

> Although Dr. Tackett opined that Dr. Chung "disregarded [the] serious and known risks" of combining the three drugs, his conclusion was merely speculative, because he lacked any insight into Dr. Chung's subjective knowledge. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere ... speculation [does] not create a factual dispute for purposes of summary judgment.") (citation omitted). Dr. Tackett's opinion was predicated upon his position that Dr. Chung administered the medications without assessing Keane's actual medical condition and without regard to possible withdrawal systems. This accusation is one of negligence as opposed to deliberate indifference. As we recognized in *Lolli* [*v. County of Orange*, 351 F.3d 410 (9th Cir. 2003)], there must be a conscious disregard of a serious risk of harm for deliberate indifference to exist. *See Lolli*, 351 F.3d at 421. If Dr. Chung had assessed

> Keane and determined that he was suffering from withdrawal and, in the face of that knowledge, administered drugs that she knew to be life-threatening, her conduct might then meet the deliberate indifference standard. In *Lolli*, the officers knew, because they were told, that Lolli was a diabetic and needed food to avoid diabetes-induced ailments. *See id.* In contrast, Dr. Chung denied even administering the amounts of medication found in Keane's system. Additionally, Dr. Chung, who had treated Keane for a considerable period of time, attributed Keane's "withdrawal" symptoms to flashbacks. Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a claim of deliberate indifference. *See Jackson* [*v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)].

391 F.3d at 1059-60.

At issue in this matter is whether prison medical staff were deliberately indifferent to Plaintiff's needs for care for his right shoulder injuries, including allegations that Defendants failed to provide proper pain medication. The Court finds that the medical issues in this case are not so complicated and difficult that an expert is required to aid the factfinder in determining the nature of the medical need or the nature of the care needed and given. The Court concludes that an expert cannot provide testimony as to the subjective element of whether Defendants' actions were taken in conscious disregard of a serious medical condition. Therefore, the Court will not appoint a Rule 706 expert witness.

Nothing prevents Plaintiff from obtaining his own expert witness at his own cost to aid him in his case. Fed. R. Evid. 706(d). Accordingly, Plaintiff is free to obtain an outside expert opinion to support his case at his own expense or on a contingency basis without a court order, and to supplement his response to the motion for summary judgment as set forth above.

**ORDER - 9**

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Reconsideration of Appointment of Counsel (Dkt. 59) is DENIED.

2. Plaintiff's Motion and Affidavit for Extension of Time upon Release (Dkt. 62) is GRANTED to the extent that Plaintiff may have until **May 31, 2011**, in which to file any supplemental response to the pending Motion for Summary Judgment. The supplement must be for the purpose of briefing and submissions prepared by new counsel or adding expert witness testimony in opposition to summary judgment. Defendants may have until **June 17, 2011**, to file any reply to the supplement. No further briefing shall be submitted after that date by either party.

3. Plaintiff's Motion for a Court Expert (Dkt. 66) is DENIED.

DATED: **March 10, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge